IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| COMMONWEALTH OF PUERTO RICO and COMMONWEALTH OF PUERTO RICO through the ENVIRONMENTAL QUALITY BOARD, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) ) | |
| SHELL OIL COMPANY, SHELL COMPANY PUERTO RICO LTD., SHELL CHEMICAL YABUCOA, INC., SHELL TRADING (US) COMPANY, MOTIVA ENTREPRISES, LLC, EQUILON ENTREPRISES, LLC, CHEVRONTEXACO CORPORATION, CHEVRON, U.S.A., INC.,  CHEVRON PUERTO RICO, LLC, TEXACO PUERTO RICO, INC., CHEVRON PHILLIPS CHEMICAL PUERTO RICO CORE, INC., TEXACO PETROLEUM, INC. CHEVRON INTERNATIONAL OIL COMPANY, INC., TEXACO REFINING AND MARKETING, INC., CHEVRON CARIBEAN, INC., CHEVRON ESTRELLA PUERTO RICO, INC., SUNOCO, INC., SUNOCO INC. (R&M), PUERTO RICO SUN OIL COMPANY, LLC, CONOCOPHILLIPS COMPANY, CITGO REFINING AND CHEMICAL COMPANY, LP, CITGO INTERNATIONAL P.R., CITGO PETROLEUM CORPORATION, TOTAL PETROLEUM PUERTO RICO CORPORATION, TOTAL OIL INC., LYONDELL CHEMICAL COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **District Court**  Case No. _O7-15 05 (ccc)_ |
| Defendants. | ) ) | |

## COMPLAINT

COMES NOW Plaintiff, the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico through the Puerto Rico Environmental Quality Board (collectively referred to as "the Commonwealth" or "Plaintiff"), a sovereign entity that manages, controls, holds in trust, and owns the water resources within its boundaries on behalf of the public as trustee over the Commonwealth's water resources and quasi-sovereign interests, by and through its undersigned counsel, brings this civil action against Defendants, Shell Oil Company, Shell Company Puerto Rico Ltd., Shell Chemical Yabucoa, Inc., Shell Trading (US) Company, Motiva Enterprises, LLC, Equilon Enterprises, LLC, ChevronTexaco Corporation, Chevron, U.S.A., Inc., Chevron Puerto Rico, LLC, Texaco Puerto Rico, Inc., Chevron Phillips Chemical Puerto Rico Core Inc., Texaco Petroleum, Inc., Chevron International Oil Company, Inc., Texaco Refining and Marketing, Inc., Chevron Caribbean, Inc., Chevron Estrella Puerto Rico, Inc., Sunoco, Inc., Sunoco, Inc. (R&M), Puerto Rico Sun Oil Company LLC, ConocoPhillips Company, CITGO Refining and Chemical Company, LP, CITGO International P.R., CITGO Petroleum Corporation, Total Petroleum Puerto Rico Corporation, Total Oil Inc., Lyondell Chemical Company (collectively hereinafter referred to as the "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court over this action is based upon 28 U.S.C. § 1331; and 42 U.S.C. § 9613(b).

2.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), 28

U.S.C. § 1395(a), and 42 U.S.C. § 9613(b).

## SUMMARY OF THE CASE

4.      The waters of the Commonwealth, whether surface or ground waters,

constitute limited, precious and invaluable public resources that are owned and held in

trust for the citizens of the Commonwealth and for which the Commonwealth has the

authority and responsibility to protect for present and future generations.

5.      Defendants' use of methyl tertiary butyl ether and its natural degradation

byproducts, including tertiary butyl alcohol (collectively referred to herein as "MTBE")

in gasoline has created an unparalleled threat to both the surface and ground waters of the

Commonwealth, including public and private drinking water supplies. Unlike other

gasoline constituents, MTBE has unique characteristics that cause extensive

environmental contamination.   MTBE contaminates and spreads in water resources

quickly and is difficult to remove and treat, consequently presenting a grave threat to

waters throughout the Commonwealth. MTBE has already contaminated water resources

of the Commonwealth and threatens to contaminate many more, as a result of the normal

and foreseeable storage, purchase and use of gasoline within the Commonwealth.

6.      MTBE can cause significant adverse health effects and, even at very low

concentrations, can render drinking water unfit for human consumption due to the fact

that MTBE has a very strong odor and taste.

7.      The Defendants in this action are all corporate members of the petroleum

and chemical industries.  As described below, Defendants include refiners of gasoline

containing MTBE; manufacturers and promoters of MTBE; suppliers of gasoline

containing MTBE; and owners and operators of facilities that have released MTBE into

the waters of the Commonwealth.

3

8.     In addition to producing and/or supplying MTBE or gasoline containing MTBE within the Commonwealth, Defendants knowingly and willfully promoted, marketed and sold MTBE and petroleum products containing MTBE, when they knew or reasonably should have known that MTBE would be released into the environment and pollute the waters of the Commonwealth, would interfere with the Commonwealth's interest in protecting and preserving the Commonwealth's waters, and would threaten public health and welfare and the environment, as has occurred and is continuing to occur within the Commonwealth.

**PLAINTIFF**

9.     Plaintiff, the Government of the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico through the Environmental Quality Board, is a sovereign entity that manages, controls, holds in trust, and owns the water resources within its boundaries. It owns and holds such resources in trust for the benefit of all of its citizens. The Commonwealth brings this action as a trustee and owner of waters within the Commonwealth and pursuant to its police powers, which include, but are not limited to, the power to prevent pollution of the waters of the Commonwealth, prevent public nuisances, and to prevent potential hazards to the public health, welfare, and environment.

10.     Plaintiff has standing to sue because it has a property interest in the waters of the Commonwealth as well as a quasi-sovereign interest in protecting such waters from contamination. The contamination of the waters of the Commonwealth by MTBE constitutes an injury to the waters of the Commonwealth, property owned by the Commonwealth and held in public trust by the Commonwealth for the People of Puerto Rico. The Commonwealth seeks damages in its *parens patriae* capacity for the contamination of such waters.

4

11.     It is the public policy of the Commonwealth to maintain the purity of the waters of Puerto Rico required for the welfare, safety, and development of the Commonwealth and to insure and protect the water supply that may be needed by present and future generations.  To achieve this purpose, the laws of the Commonwealth have deemed all waters and bodies of water of Puerto Rico to be the property and wealth of the People of Puerto Rico.  *See* 12 L.P.R.A. §§ 1115a, 1115c.  It is the duty of the Commonwealth Government to administer and protect this patrimony in the name and on behalf of the Puerto Rican people.

12.     The Commonwealth, through the Environmental Quality Board, has standing to enforce the Commonwealth's environmental regulations and statutes through The Public Policy Environmental Act, Title II, Act No. 9, 12 L.P.R.A. §1121 *et seq.*

13.     The Secretary of Justice may, when in his judgment the interests of the Commonwealth require it, institute and conduct proceedings against persons who intrude on the lands, rights, or property of the Commonwealth, or commit or erect any nuisance thereon.

## DEFENDANTS

14.     The Defendants in this action are all corporate members of the petroleum industry.  As described below, Defendants include refiners of gasoline containing MTBE that contaminates waters of the Commonwealth; manufacturers and promoters of MTBE; suppliers of gasoline containing MTBE that contaminates waters of the Commonwealth; and owners and/or operators of gasoline facilities that have released MTBE that contaminates waters of the Commonwealth.

15.     Any and all references to Defendant, Defendants, or a particular Defendant by name in this Complaint include all predecessors, successors, parents, subsidiaries, affiliates, divisions, and agents of the named Defendants.

5

16.     When the term "Defendants" is used alone, it refers to all Defendants named herein jointly and severally.

17.     When reference in this complaint is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

A.      **Refiner/Supplier Defendants**

18.     Upon information and belief, the following Defendants, at all times relevant to this action, refined, marketed and/or otherwise supplied (directly or indirectly) gasoline and/or other products containing MTBE that each such Defendant knew or should have known would be delivered into the Commonwealth.

19.     ChevronTexaco Corporation ("ChevronTexaco") is a Delaware corporation with its principal place of business at 6001 Bollinger Road, San Ramon, California. Upon information and belief, the Commonwealth alleges that ChevronTexaco was formed as a result of a merger in 2001 of Chevron Corporation and Texaco, Inc. Upon information and belief, the Commonwealth further alleges that ChevronTexaco owns and/or controls defendant Chevron U.S.A., Inc.

20.     Chevron Puerto Rico LLC ("Chevron Puerto Rico") is an affiliate of Chevron Global Energy, Inc., which is also known as Chevron Texaco Products Company, a Delaware limited liability company, with its principal place of business at 6001 Bollinger Canyon Rd., Room 5378, San Ramon, CA 94583. Chevron Puerto Rico's principal place of business is located at the Texaco Plaza Building, Suite 400, Metro

6

Office Park, Guaynabo, Puerto Rico 00968.   Upon information and belief, the Commonwealth alleges that Chevron Puerto Rico was formerly known as Texaco Puerto Rico LLC, which was formerly known as Texas Company (Puerto Rico) Inc.

21.   Texaco Puerto Rico, Inc, is a Puerto Rico corporation with its principal place of business located at Texaco Plaza Metro Office Park, Street 1 #2, 4th Floor, Suite 400, Guaynabo, Puerto Rico 00968.

22.   Chevron Phillips Chemical Puerto Rico Core, Inc. ("Chevron Phillips"), upon information and belief formally known as Phillips Puerto Rico Core Inc., is a Delaware corporation with its principal place of business in Puerto Rico located at Carr 710 KM 1.3, Guayama, Puerto Rico 00784.   Chevron Phillips is a subsidiary of Chevron Phillips Chemical LLC.

23.   Texaco Petroleum, Inc. is a Delaware Corporation with its principal place of business in Puerto Rico at Street 1, #2 Metro Office Park, Guayanabo, Puerto Rico 00968.

24.   Chevron International Oil Company, Inc. ("Chevron International") is a Delaware corporation with its principal place of business in Puerto Rico at Almacenes Del Castillo, Zona Libre, San Juan, Puerto Rico.

25.   Chevron U.S.A., Inc. ("Chevron U.S.A.") is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Road, San Ramon, California. Chevron U.S.A. acquired Gulf Oil Corporation ("Gulf Oil") through merger in 1984 and is the successor in interest to Gulf Oil.

26.     The term "Chevron" as used in this Complaint refers to ChevronTexaco and Chevron U.S.A.

27.     Texaco Refining and Marketing, Inc. ("Texaco") is a Delaware corporation with its principal place of business in Houston, Texas.

28.     CITGO Refining and Chemical Company, LP ("CITGO Refining"), a subsidiary of CITGO Investment Company, is an Oklahoma limited partnership with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

29.     CITGO International P.R. ("CITGO International"), also known as CITGO Puerto Rico Petroleum Corporation is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma 74136.

30.     CITGO Petroleum Corporation ("CITGO Petroleum") is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

31.     The term "CITGO" as used in this Complaint refers to CITGO Petroleum and/or CITGO Refining.

32.     ConocoPhillips Company ("ConocoPhillips") is a Delaware corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas. On information and belief, the Commonwealth alleges that ConocoPhillips was formed as the result of a merger in 2002 of Conoco, Inc. and Phillips Petroleum Company. On information and belief, the Commonwealth further alleges that ConocoPhillips is the successor corporation to Conoco, Inc. and Phillips Petroleum Company. The Commonwealth is further informed and believed that ConocoPhillips is the successor

8

corporation to Tosco Corporation, including its subsidiary Tosco Refining LP, which was acquired by Phillips Petroleum Company in 2001.

33.    Shell Oil Company ("Shell Oil") is a Delaware corporation with its principal place of business at One Shell Plaza, 910 Louisiana, Houston, Texas.

34.    Shell Company Puerto Rico Ltd. is a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico.

35.    Shell Chemical Yabucoa, Inc. ("Shell Chemical Yabucoa") is a Puerto Rico corporation with its principal place of business located at Road 901, KM 2.7, Yabucoa, Puerto Rico 00767.

36.    Shell Trading (US) Company ("Shell Trading") is a Delaware corporation with its principal place of business in Houston, Texas and its principal place of business in Puerto Rico at 361 San Francisco Street, Penthouse, Old San Juan, Puerto Rico, 00901.

37.    Motiva Enterprises, LLC ("Motiva") is a Delaware limited liability company with its principal place of business at 1100 Louisiana, Suite 1000, Houston, Texas.    Upon information and belief, the Commonwealth alleges that Motiva is a successor in interest to certain entities related to defendant Shell Oil Company and defendant Texaco Refining and Marketing, Inc., and is owned and/or controlled by Defendant Shell Oil.    Upon information and belief, the Commonwealth alleges that Motiva was formerly known as Star Enterprises LLC.

38.    Equilon Enterprises, LLC ("Equilon"), d/b/a Shell Oil Products US, is a Delaware limited liability company with its principal place of business at 1100 Louisiana Street, Suite 2200, Houston, Texas 77002.

9

39.     The term "Shell" as used herein refers to Shell Oil.

40.     Sunoco, Inc., formerly known as Sun Oil Company and Sun Company, Inc., is a Pennsylvania corporation with its principal place of business at 1801 Market Street, 27th Floor, Philadelphia, Pennsylvania 19103.

41.     Sunoco, Inc. (R&M), formerly known as Sun Refining and Marketing Company and Sun Company Inc. (R&M), is a Pennsylvania corporation with its principal place of business at 1801 Market Street, 27th Floor, Philadelphia, Pennsylvania 19103.

42.     Puerto Rico Sun Oil Company LLC is a Delaware corporation with its principal place of business located at Road 901, KM 2.7, Yabucoa, Puerto Rico 00767.

43.     The term "Sunoco" as used herein refers to Sunoco Inc. and Sunoco Inc. (R&M).

44.     Total Petroleum Puerto Rico Corporation ("Total PR"), successor to Gasolinas de Puerto Rico Corporation, is a Puerto Rico corporation with its principal place of business at Mario Julia Industrial Park, A Street, Suite 11A, Guaynabo, Puerto Rico 00920.  Upon information and belief, the Commonwealth alleges that Total PR is a wholly owned subsidiary of Total Outre Mer, S.A. of France.

45.     Total Oil, Inc. is a Delaware corporation with its principal place of business at 909 Fannin Street, Suite 2200, Houston, Texas.

**B.     MTBE Manufacturer/Supplier Defendants**

46.     Upon information and belief, the following Defendants, at all times relevant to this action, manufactured and supplied MTBE and/or other products

10

containing MTBE that each such Defendant knew or should have known would be delivered into the Commonwealth.

47.     Lyondell Chemical Company, successor in interest to ARCO Chemical Company (collectively, "Lyondell Chemical"), is a Delaware corporation with its principal place of business at 1221 McKinney Street, Houston, Texas 77010

48.     In addition to Lyondell, Defendants Chevron U.S.A., Chevron Phillips, CITGO, ConocoPhillips, Motiva, Shell Oil, and Sunoco manufactured MTBE for use in gasoline.

## C.     Owner/Operator Defendants

49.     Upon information and belief, the following Defendants, at all times relevant to this action, owned and or operated gasoline service stations and/or underground storage tanks that have discharged gasoline containing MTBE.

50.     Chevron Caribbean, Inc. ("Chevron Caribbean") is a Delaware corporation with its principal place of business at Texaco Plaza Building, Suite 400, Metro Office Park, Guaynabo, Puerto Rico 00968.  Upon information and belief, the Commonwealth alleges that Chevron Caribbean was formerly known as Texaco Caribbean, Inc.

51.     Chevron Estrella Puerto Rico, Inc. ("Chevron Estrella") is a Puerto Rico corporation, formerly known as Texaco Estrella Puerto Rico, inc., with its principal place of business at the Texaco Plaza Building, Suite 400, Metro Office Park, Guaynabo, Puerto Rico 00968.

52.     Total PR is also an owner of service stations.

11

53.     Defendants Chevron U.S.A., Chevron Phillips, CITGO, ConocoPhillips, Motiva, Shell Oil, and Sunoco are/were the owners of services stations and/or are the successors to the owners of service stations.

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

### The Contaminant – MTBE

54.     Methyl tertiary butyl ether is an additive to gasoline.  As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE.

55.     TBA is present in some gasoline as an impurity in commercial grade MTBE and a degradation or breakdown product of MTBE.

56.     MTBE contaminates the environment through leaks and spills from gasoline delivery systems.   Once released to the environment, MTBE has unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of MTBE in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene, toluene, ethylbenzene, and xylene).

57.     Once released into the subsurface, MTBE separates from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE has a strong affinity for water.  If MTBE is released into the environment in sufficient quantities, MTBE has the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.  There is a potentially lengthy delay, based on site specific factors, between the time MTBE is released and the time it and its degradation

12

products accumulate in potentially usable ground water in sufficient quantities to contaminate public drinking water resources.

58.    MTBE spreads farther and faster than other components of gasoline, resists biodegradation, and is difficult and costly to remove from groundwater and drinking water supplies.

59.    No federal or Commonwealth agency has approved MTBE as an additive to drinking water.  No federal or Commonwealth agency has approved releasing MTBE to groundwater.

60.    Along with its other vile properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption.

61.    MTBE also presents a significant public health threat.    Because of MTBE's potential for causing cancer, it is currently classified by the U.S. Environmental Protection Agency ("EPA") as a "possible carcinogen" and an EPA draft risk assessment has recommended reclassifying MTBE as a "probable carcinogen."

62.    Because of MTBE's propensity to contaminate vast quantities of water, to date, at least 25 States or Commonwealths have banned or enacted laws that have set a date certain banning the use of MTBE as an additive in gasoline.

**Defendants' Promotion of MTBE**

63.    The Refiner/Supplier and Manufacturer/Supplier Defendants, all of whom have promoted the use of gasoline containing MTBE for its purported environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound, including (among other things): widespread pollution of groundwater with MTBE, contamination of public drinking water by these compounds, drinking water supplies rendered unfit and unusable

13

for consumption, public health threatened, and increased costs to public water suppliers and their customers.

64.     Despite knowing that MTBE pollution was inevitable unless adequate precautions were taken, and despite the availability of reasonable alternatives (including but not limited to adequate warnings) Defendants chose not to warn customers, retailers, regulators or public officials, including the Commonwealth.  As production and sales of these compounds and gasoline containing them increased, Defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product.  Despite knowing the risk of harm posed by MTBE, Defendants also failed to warn purchasers, the public, regulators, and/or the Commonwealth that without such precautions more and more MTBE would be released into the environment and cause, among other significant adverse effects, long term groundwater contamination, pollution of water supplies, and threats to public health and safety.

65.     The Refiner/Supplier Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing MTBE to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent releases of MTBE to the subsurface, knowing that release to the environment of this compound would be inevitable because a substantial percentage of those gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, including placing the gasoline in inadequate and leaking gasoline delivery systems, and failing to take reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

14

66.     The Refiner/Supplier and Manufacturer/Supplier Defendants took affirmative actions that led to the contamination of the Commonwealth's groundwater resources with MTBE, including but not limited to, making representations to downstream users of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.  Indeed, Defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

67.     The manufacturers, refiners, and suppliers of MTBE and gasoline containing MTBE had a duty (which they breached) to test MTBE thoroughly to determine its environmental fate and transport characteristics, and potential human health impacts before they sold MTBE and/or gasoline containing MTBE, and had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks.  Nonetheless, the Defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing MTBE, and, among other things, failed to abate groundwater contamination caused by MTBE, including contamination in and pollution to the Commonwealth's groundwater resources.

68.     The Refiner/Supplier and Manufacturer/Supplier Defendants, their agents and employees created, participated in, and/or facilitated the flow of MTBE and/or gasoline containing one or more such compounds into gasoline distribution, storage, and dispensing systems that they knew could not safely contain such products.  The widespread problems of leaking gasoline delivery systems were well known to the Defendants prior to the introduction of MTBE.  At least as early as the mid-1960's, these

15

Defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

69.     Before introducing MTBE into gasoline delivery systems, the Refiner/Supplier and Manufacturer/Supplier Defendants knew, or reasonably should have known, among other things, that MTBE released into the environment would mix easily with ground water, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The Defendants knew, or they reasonably should have known, that the gasoline distribution and retail system in the Commonwealth contained leaking gasoline delivery systems. They knew, or they reasonably should have known, that gasoline facilities, including those in the Commonwealth, commonly lacked adequate storage facilities for gasoline containing MTBE, and that the operators of these facilities were unaware of either the special hazards of MTBE or the steps necessary to eliminate or mitigate those hazards.

70.     At all times relevant to this action:

(a)     The Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE to the Refiner/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations and/or other gasoline delivery systems in the Commonwealth. Upon information and belief, the Commonwealth alleges that such sales, exchanges, supplies, distributions,

16

deliveries and/or other provisions of gasoline containing MTBE to such

facilities occurred over time, up to and including the present;

(b)    Gasoline containing MTBE was released to the subsurface from retail

gasoline facilities owned and/or operated by the Owner/Operator

Defendants, and each of them, and from other facilities at dispersed

locations in the Commonwealth.  Such releases of gasoline containing

MTBE have occurred over time, have been discovered or have become

discoverable at various times, and are still occurring, all in varying

amounts at different locations, impacting various aquifers in various sub-

basins within the Commonwealth; and

(c)    MTBE takes time to migrate from release points to locations within the

subsurface at which they have an appreciable impact on groundwater

resources. MTBE has over time migrated in the subsurface from dispersed

release points at or near the surface at retail gasoline facilities in the

Commonwealth, causing pollution, contamination, and substantial damage

to the Commonwealth's groundwater resources, causing appreciable injury

to the Commonwealth.

## COUNT I
### (Strict Products Liability for Defective Design and
### Failure to Warn Against All Defendants)

71.    The Commonwealth re-alleges paragraphs 1 through 70 above, and by this

reference incorporates them as though set forth in full.

72.    The Refiner/Supplier Defendants, and each of them, designed, formulated,

manufactured, compounded, refined, provided product information and/or instructions for

use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or

sold gasoline containing MTBE.

17

73.     The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold MTBE, which was intended by said Defendants, and each of them, to be used as a gasoline additive.

74.     The Owner/Operator Defendants took delivery of, stored and sold the gasoline containing MTBE which is contaminating and polluting ground water in the Commonwealth.

75.     The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE did not require any different or special handling or precautions.

76.     Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

77.     MTBE and gasoline containing MTBE are defective products because, among other things:

(a)     The design and manufacture of these products was defective;

(b)     The benefits of using MTBE in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment, and on groundwater resources within the Commonwealth;

(c)     They cause extensive groundwater contamination by MTBE even when used in their foreseeable and intended manner;

18

(d)     Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public;

(e)     MTBE poses significant threats to the public health and welfare;

(f)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or gasoline containing MTBE, including but not limited to groundwater contamination with MTBE;

(g)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE; and

(h)     Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

78.     MTBE and/or gasoline containing MTBE were used as intended to be used and in a foreseeable manner, and as a proximate result of the defects previously described, MTBE directly and proximately caused the Commonwealth to sustain the injuries and damages set forth in this Complaint.

79.     As a direct and proximate result of the acts and omissions of the Refiner/Supplier and Manufacturer/Supplier Defendants alleged herein, the Commonwealth will have to assess, evaluate, investigate, monitor, abate, clean-up, correct, contain, and remove MTBE from groundwater resources within its territory, all at significant expense, loss, and damage.  In particular, the Commonwealth must investigate MTBE releases from all underground gasoline storage tanks within its territory, including those that have never been reported to regulators as known or suspected sources of releases.

80.     As a further direct and proximate result of the acts and omissions of the Refiner/Supplier and Manufacturer Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain damages and substantially increased expenses. The Commonwealth has incurred and will continue to incur costs and attorneys' fees in prosecuting this action. The Commonwealth is entitled to recover all such damages, together with court costs and reasonable attorneys' fees, in this action.

81.     Defendants CITGO, Chevron, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of common water supplies, public drinking water supplies, and property damage. These Defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of Plaintiff's rights.

82.     Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth. Therefore, the Commonwealth requests an award of exemplary damages, to the extent available to the Commonwealth and not prohibited by law, in an amount sufficient to punish Defendants, Chevron, CITGO, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco. After the completion of additional investigation and discovery, the Commonwealth may seek leave of court to amend this Complaint to allege a claim for exemplary damages, to the extent available to the Commonwealth and not prohibited by law, against additional Defendants if warranted by the facts.

20

## COUNT II
### (Public Nuisance - 32 L.P.R.A. § 2761)

83.     The Commonwealth re-alleges paragraphs 1 through 82 above, and by this reference incorporates them as though set forth in full.

84.     The negligent, reckless, intentional and ultrahazardous activity of Defendants, and each of them, alleged herein has resulted in the contamination and pollution of the waters of the Commonwealth as alleged herein, and constitutes a public nuisance. 32 L.P.R.A. § 2761. The Secretary of Justice is authorized to institute proceedings against those parties that intrude on the lands, rights, or property of the Commonwealth, or commit a nuisance thereon. 3 L.P.R.A. § 73.

85.     The public nuisance caused, contributed to, maintained, and/or participated in by Defendants, and each of them, has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Commonwealth's significant property and quasi-sovereign interests in the waters of the Commonwealth, the Commonwealth's ability to protect, conserve and manage the waters of the Commonwealth, which are by law precious and invaluable public resources held by the Commonwealth in trust for the benefit of the public, as well as the rights of the people of the Commonwealth to enjoy a water supply free from unacceptable health risk, taste, odor, pollution, and contamination.

86.     Each Defendant has, at all times relevant to this action, caused, maintained, participated in and/or assisted in the creation of such public nuisance. Among other things, each Defendant is a substantial contributor to such public nuisance as follows:

21

a. The Manufacturer/Supplier Defendants manufactured, promoted and supplied MTBE to refiners when they knew, or reasonably should have known, that: (i) the refiners would in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (iii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iv) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate groundwater, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

b. The Refiner/Supplier Defendants, and each of them, refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth, when they knew, or reasonably should have known, that: (i) such gasoline would be placed into leaking gasoline delivery systems; (ii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate groundwater, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

c. Defendants CITGO, Chevron, ConocoPhillips, Shell, Sunoco, and Texaco had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to groundwater therefrom. These

22

Defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the Commonwealth.

d. Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew, or reasonably should have known, that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

e. Despite their knowledge that contamination of the waters of the Commonwealth with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

f. Defendants CITGO, Chevron, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including the Commonwealth, and the public regarding the hazards of MTBE.

87.   The public nuisance caused, contributed to, maintained, and/or participated in by Defendants, and each of them, has caused and/or threatens to cause

23

substantial injury to the waters of the Commonwealth, in which the Commonwealth has significant property rights and quasi-sovereign interests.

88.     The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased. MTBE continues to threaten, migrate into and enter the waters of the Commonwealth.  Until the nuisance is abated and the waters of the Commonwealth are returned to their pre-injury quality, the Defendants are liable for the creation and continued maintenance of a public nuisance in contravention of the public's right to clean water and an unspoiled environment.

89.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which Defendants are jointly and severally liable.

90.     As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which Defendants are jointly and severally liable.

91.     The injuries to the waters of the Commonwealth caused and/or threatened by Defendants' acts and omissions as alleged herein are indivisible.

92.     Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable

24

impact upon the Commonwealth. Therefore, the Commonwealth requests an award of exemplary damages, to the extent available to the Commonwealth and not prohibited by law, in an amount sufficient to punish Defendants, Chevron, CITGO, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco. After the completion of additional investigation and discovery, the Commonwealth may seek leave of court to amend this Complaint to allege a claim for exemplary damages, to the extent available to the Commonwealth and not prohibited by law, against additional Defendants if warranted by the facts.

### COUNT III
### (Trespass - 31 L.P.R.A § 5141)

93.     The Commonwealth re-alleges paragraphs 1 through 92 above, and by this reference incorporates them as though set forth in full.

94.     The Commonwealth is the owner and/or actual possessor of property rights and interests in the waters of the Commonwealth, as alleged herein, which the Commonwealth holds in trust for the benefit of the public. These property rights and interests include, but are not limited to, a quasi-sovereign interest in protecting the quality of such waters from contamination and pollution.

95.     Defendants, and each of them, intentionally manufactured, refined, marketed, and/or otherwise supplied MTBE and/or gasoline containing MTBE with the knowledge that contamination of the waters of the Commonwealth with MTBE was substantially certain to result.

96.     Among other things, Defendants, and each of them, intentionally caused MTBE to enter, invade, intrude upon and injure the waters of the Commonwealth as follows:

25

g. The Manufacturer/Supplier Defendants manufactured, promoted and supplied MTBE to refiners when they knew that it was substantially certain that: (i) the refiners would in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (iii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iv) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate groundwater, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

h. The Refiner/Supplier Defendants, and each of them, refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth, when they knew that it was substantially certain that: (i) such gasoline would be placed into leaking gasoline delivery systems; (ii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate groundwater, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

i. Defendants CITGO, Chevron, ConocoPhillips, Shell, Sunoco, and Texaco had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to groundwater therefrom. These

26

defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the Commonwealth.

j.  Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew that it was substantially certain that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

k.  Despite their knowledge that groundwater contamination with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

l.  Defendants CITGO, Chevron, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including the Commonwealth, and the public regarding the hazards of MTBE.

97.  Each of these Defendants' intentional acts and omissions has caused a trespass upon and contaminated the property, namely the waters, of the Commonwealth

27

causing the Commonwealth damages for which Defendants are liable pursuant to 31 L.P.R.A § 5141.

98.    The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the Commonwealth.  Defendants continue to refrain from taking responsibility for this trespass and from taking action to remediate existing contamination and prevent future contamination of the Commonwealth's waters.

99.    The Commonwealth has not consented to and does not consent to the trespass alleged herein. Defendants, and each of them, knew or reasonably should have known, that the Commonwealth would not consent to this trespass.

100.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

101.    As a further direct and proximate result of the acts and omissions of the defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

102.    The injuries to the waters of the Commonwealth caused and/or threatened by defendants' acts and omissions as alleged herein are indivisible.

28

103.    Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth. Therefore, the Commonwealth requests an award of exemplary damages, to the extent available to the Commonwealth and not prohibited by law, in an amount sufficient to punish Defendants, Chevron, CITGO, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco. After the completion of additional investigation and discovery, the Commonwealth may seek leave of court to amend this Complaint to allege a claim for exemplary damages, to the extent available to the Commonwealth and not prohibited by law, against additional Defendants if warranted by the facts.

## COUNT IV
### (Negligence - 31 L.P.R.A § 5141)

104.    The Commonwealth re-alleges paragraphs 1 through 103 above, and by this reference incorporates them as though set forth in full.

105.    Defendants had a duty to the Commonwealth to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

106.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise entrusted MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the waters of the Commonwealth, resulting in the damages alleged in this Complaint.

29

107. Defendants, and each of them, failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute public waters, render drinking water unusable and unsafe, and threaten public health and welfare and the environment.

108. The Manufacturer/Supplier Defendants, among other things, manufactured, promoted and/or otherwise supplied MTBE to refiners when they knew, or reasonably should have known, that: (a) the refiners would in turn blend the MTBE into gasoline; (b) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (c) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (d) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

109. The Refiner/Supplier Defendants, and each of them, among other things, refined, marketed, and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth and/or in areas affecting waters of the Commonwealth, when they knew, or reasonably should have known, that: (a) such gasoline would be placed into leaking gasoline delivery systems; (b) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (c) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

30

110.    Defendants CITGO, Chevron, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco also had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to ground water from such systems. These defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems.

111.    Defendants, and each of them, manufactured, refined, marketed, promoted and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew, or reasonably should have known, that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

112.    Despite their knowledge that groundwater contamination with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

113.    In light of the facts alleged herein, Defendants, and each of them, breached their duty to use due care in the design, manufacture, formulation, handling, control, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

114.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or

31

monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

115.   As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

116.   The injuries to the waters of the Commonwealth caused and/or threatened by Defendants' acts and omissions as alleged herein are indivisible.

117.   The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased. MTBE continues to threaten, migrate into and enter the waters of the Commonwealth. Defendants continue to refrain from taking responsibility for this trespass and from taking action to remediate existing contamination and prevent future contamination of the Commonwealth's waters.

118.   Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth. Therefore, the Commonwealth requests an award of exemplary damages, to the extent available to the Commonwealth and not prohibited by law, in an amount sufficient to punish Defendants, Chevron, CITGO, ConocoPhillips, Lyondell, Shell, Sunoco, and Texaco. After the completion of additional investigation and discovery, the Commonwealth may seek leave of court to amend this Complaint to

allege a claim for exemplary damages, to the extent available to the Commonwealth and not prohibited by law, against additional Defendants if warranted by the facts.

## COUNT V
### (Puerto Rico Public Policy Environmental Act, Water Pollution Control Act, and Underground Storage Tank Control Regulations)

119.    The Commonwealth re-alleges paragraphs 1 through 118 above, and by this reference incorporates them as though set forth in full.

120.    The Defendants are each "person[s]" as defined by 24 L.P.R.A. § 591(d).

121.    The activities of Defendants, and each of them, alleged herein has resulted in the "pollution" of "waters" of the Commonwealth as defined by 24 L.P.R.A. § 591(i) and § 591(e), respectively.

122.    The MTBE and petroleum discharged to waters of the Commonwealth by the Defendants are "other" types of pollution as that term is defined by 24 L.P.R.A § 591(h).

123.    The Defendants' activities, individually and collectively, have directly or indirectly, caused the discharge or permitted the discharge of MTBE into the waters of the Commonwealth polluting said waters in such manner as to place them out of the minimum standards of purity set forth in the Commonwealth's regulations promulgated pursuant to 24 L.P.R.A. § 599 in violation of 24 L.P.R.A. § 595 and 12 L.P.R.A. § 1131(13)(A)(i).

124.    Each Defendant directly or indirectly, caused the discharge or permitted the discharge of MTBE into the waters of the Commonwealth and/or onto the land where

MTBE has seeped or will ultimately seep into the waters of the Commonwealth, polluting said waters.

125.   Violations of 24 L.P.R.A. § 595 and the regulations promulgated under 24 L.P.R.A. § 599 constitute violations of The Public Policy Environmental Act, Title II, Act No. 9, 12 L.P.R.A. §1121 *et seq. See* 12 L.P.R.A. § 1132(b).

126.   The Defendants' unlawful discharges of MTBE into the waters of the Commonwealth caused damages to the environment and natural resources of the Commonwealth including but not limited to the ground waters, including Class SG1 ground waters, which are subject to very stringent criteria pursuant to the Puerto Rico Water Quality Standards set forth in EQB Regulation 6616, which constitutes an EPA-approved Water Quality Standard pursuant to 40 C.F.R. § 131.21 under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*

127.   Pursuant to § 3.2.6(B)(7) of EQB Regulation 6616, the taste and odor of Class SG1 waters shall not be altered except by natural means. Any discharge of MTBE into such waters violates this requirement due to MTBE's putrid smell and foul taste. Accordingly, Defendants have violated this requirement.

128.   The Defendants' unlawful releases of regulated substances, containing MTBE, from underground storage tank system[s] into the waters of the Commonwealth violate Rule 1102(A) and (B) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362.

129.   Defendants' installation, operation, and/or closure of underground storage tank systems without taking all practicable measures to control releases or spills violate

34

Rule 1102(D) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362.

130.    Plaintiff EQB is empowered to and does seek the total value of the damages caused to the environment and natural resources of the Commonwealth caused by the Defendants' unlawful discharges of MTBE. 12 L.P.R.A. § 1131(29) and § 1136(b).

131.    Because the Defendants' activities, individually and collectively, have directly or indirectly, caused the discharge or permitted the discharge of MTBE into waters of the Commonwealth, the Defendants are liable for the total value of the damages caused to the environment and natural resources of the Commonwealth including the reasonable cost to restore and rehabilitate the environment and damaged natural resources along with the reasonable assessment costs, fees, and expenses the Commonwealth has incurred and will incur to assess, mitigate, restore, or replace any natural resources damaged or destroyed by the discharge of MTBE. 12 L.P.R.A § 1131(29) and § 1136(b).

## COUNT VI
### (Comprehensive Environmental Response, Compensation, and Liability Act)

132.    The Commonwealth re-alleges paragraphs 1 through 131 above, and by this reference incorporates them as though set forth in full.

133.    The Commonwealth is a "State" as defined by CERCLA § 101(27), 42 U.S.C. § 9601(27).

134.    There have been releases or threatened releases, as defined under CERCLA § 101(22), 42 U.S.C. § 9601(22), of MTBE, which is a "hazardous substance," as defined under CERCLA § 101(14), 42 U.S.C. § 9601(14), at or from facilities within the Commonwealth.

35

135.   Each of the Defendants is a "person" as defined by CERCLA § 101(21), 42 U.S.C. § 9601(21).

136.   Each of the Defendants is a liable person within the meaning of CERCLA § 107(a)(1)-(3), 42 U.S.C. § 9607(a)(1)-(3).

137.   Pursuant to CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), the Defendants are jointly and severally liable to the Commonwealth for all costs of removal or remedial action incurred by the Commonwealth not inconsistent with the national contingency plan to address releases or threatened releases of MTBE at or from facilities within the Commonwealth.

138.   Pursuant to CERCLA § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), and CERCLA § 107(f), 42 U.S.C. §9607(f), the Defendants are jointly and severally liable to the Commonwealth for damages for injury to, destruction of, and/or loss of natural resources resulting from the releases or threatened releases of MTBE at or from facilities within the Commonwealth.

139.   "Natural resources," within the meaning of CERCLA § 101(16), 42 U.S.C. § 9601(16), located within the Commonwealth and belonging to, managed by, controlled by, or appertaining to the Commonwealth, have been injured, destroyed, or lost as a result of the releases or threatened releases of MTBE at or from facilities within the Commonwealth.

140.   The Commonwealth is entitled to recover its reasonable costs in assessing the injury to, destruction of, or loss of natural resources resulting from the releases or threatened releases of MTBE at or from facilities within the Commonwealth.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the Commonwealth of Puerto Rico, in both its *parens patriae* capacity and through the Environmental Quality Board, comes before this Court, and respectfully requests this Court to:

A. Declare that Defendants are jointly and severally liable for the full costs of all investigatory, remedial, removal, and other actions necessary to detect, delineate, abate, remove and remediate MTBE in the waters of the Commonwealth and to restore such waters to their original condition, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth;

B. Order Defendants to pay compensatory damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE, including but not limited to, the costs of:

(1) Testing soils around all underground storage tanks suspected of leaking MTBE or MTBE-containing substances;

(2) testing all public and private drinking water supplies for the presence of MTBE;

(3) treatment of all water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(4) present and future monitoring of surface and ground waters to detect the presence of MTBE;

C. Order Defendants to pay all other damages sustained by the Commonwealth as a direct and proximate result of defendant's acts and omissions alleged herein, according to proof, including but not limited to remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

D. Order Defendants to pay Damages to compensate the Commonwealth for injuries to the natural resources of the Commonwealth, including lost use, lost value, and existence value of natural resources harmed by releases of MTBE;

E. Issue an Order declaring that the Owner/Operator Defendants' gasoline delivery systems and/or refineries constitute a nuisance in the manner they are maintained and operated, and compelling them to abate that nuisance;

F. Issue an Order compelling Defendants and each of them to abate the public nuisance proximately caused by their conduct as alleged herein;

G. Grant all appropriate injunctive relief to investigate, abate and/or mitigate the MTBE contamination of waters of the Commonwealth;

H. Order defendants Chevron U.S.A. Inc., ChevronTexaco Corporation, CITGO Refining and Chemical Company, LP, CITGO Petroleum Corporation, ConocoPhillips Company, Lyondell Chemical Company, Shell Oil Company, Sunoco, Inc., Sunoco, Inc. (R&M), and Texaco

Refining and Marketing Inc. to pay exemplary damages, to the extent available to the Commonwealth and not prohibited by law, in an amount sufficient to punish defendants Chevron U.S.A. Inc., ChevronTexaco Corporation, CITGO Refining and Chemical Company, LP, CITGO Petroleum Corporation, ConocoPhillips Company, Lyondell Chemical Company, Shell Oil Company, Sunoco, Inc., Sunoco, Inc. (R&M), and Texaco Refining and Marketing Inc. and to deter those defendants from ever committing the same or similar acts;

I.  Order Defendants to pay all costs and reasonable attorneys' fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

J.  For such and other further relief as the court may deem just and proper.

PLAINTIFF IS ENTITLED TO A TRIAL BY A JURY AND HEREBY DEMANDS A TRIAL BY A JURY.

Dated:  June 12, 2007

Roberto Sanchez Ramos, Esquire
Secretary of Justice
Commonwealth of Puerto Rico


Orlando H. Martinez, Esquire (USDC PR. 213052)
Orlando H. Martinez Law Offices
Centro de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico  00907


John K. Dema, Esquire
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands  00820-5008


Gordon C. Rhea, Esquire
Richardson, Patrick, Westbrook &
Brickman, L.L.C.
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29465

40